IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

OTTO COLEMAN,

            Petitioner,    :    Case No. 3:15-cv-026

- vs -                          District Judge Thomas M. Rose
                                       Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional Institution,

            Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner Otto Coleman brings this habeas corpus action *pro se* under 28 U.S.C. § 2254 to obtain relief from his conviction in the Montgomery County Common Pleas Court for aggravated robbery, vandalism, and assault on a peace officer (Petition, Doc. No. 3, PageID 20). The case is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Coleman pleads the following grounds for relief:

> **Ground One**: The trial court erred in overruling Appellant's Rule 29 motion as to the aggravated robbery count.
>
> **Supporting Facts:** No fingerprints of the defendant were ever found on the gun. The Court nor witness could identify on the video of the incident where Coleman grabbed the gun. Coleman was frisked based on his race/racism.

1

>**Ground Two**:  The trial court erred in overruling Appellant's Rule 29 motion as to the vandalism count.
>
>**Supporting Facts:**  The broken radio presented to the jury was not the same broken radio that was worn by the officer during the incident.  Without the actual broken radio, the jury could not make the proper determination as to whether Mr. Coleman broke the officer's radio.  This violates due process.
>
>**Ground Three:**  Appellant's conviction on the aggravated robbery count was entered against the weight of the evidence.
>
>**Supporting Facts:**  Coleman was illegally detained beyond the intrusion of a simple traffic stop and citation for the broken headlight and forced out of vehicle.  Coleman was illegally detained based on his race.

(Petition, Doc. No. 3, PageID 24-28.)

**Procedural History**

Coleman was indicted by a Montgomery County grand jury in Case No. 2010-CR-3950 on counts of aggravated robbery, vandalism, and assault on a peace officer. He initially pled not guilty on all three counts, but later changed his plea to no contest on the assault count, proceeding to jury trial on the aggravated robbery and vandalism counts.  Convicted on all three counts, he was sentenced to the twelve and one-half year sentence he is presently serving. Represented by new counsel, he appealed to the Second District Court of Appeals which affirmed the conviction March 7, 2014 (Petition, ¶ 9(d), PageID 21.)  Apparently his lawyer failed to forward a copy of the decision to him until June, 2014, causing him to miss the forty-five day time limit on appeal to the Supreme Court of Ohio.  Instead, he filed the instant Petition

**Factual Background**

The Second District Court of Appeals found the facts giving rise to Coleman's conviction as follows:

> **[\*P3]** The present appeal stems from a traffic stop of Coleman's vehicle. On December 11, 2010, Dayton police officer Jonathan Seiter was performing traffic enforcement. He was wearing a police uniform and driving a marked cruiser. Seiter observed Coleman driving on Gettysburg Avenue with a headlight out. He performed a traffic stop based on the violation. After stopping Coleman's vehicle, Seiter approached on foot and interacted with him. The officer believed he smelled a slight odor of alcohol on Coleman's breath. In response to a request for his driver's license, Coleman opened the glove box. Seiter saw pill bottles inside and asked whose they were. Coleman denied ownership of the bottles and added, "What concern of yours is that?" Seiter described Coleman as "confrontational."
>
> **[\*P4]** At that point, Seiter had Coleman step out of the vehicle. He intended to perform a weapons pat down before placing Coleman in the police cruiser for the duration of the stop. Coleman resisted a pat down, however, and the two men fought. During the altercation, Coleman obtained physical control over Seiter, pinning the officer in place and choking him. According to Seiter, Coleman "was not trying to get away." Seiter testified that he could feel Coleman tugging at the handgun he kept holstered on his belt. Seiter emphasized that Coleman did not just "brush up against" the handgun or "elbow" it. He testified that he actually felt a "tug" and **[\*\*3]** that for a "tug" to occur "[a] hand has to actually be on the grip and pulled." (Trial Tr. at 194-196). When asked again what he felt, Seiter stated: "[Coleman] tugged upward while his hand was on my gun." (*Id*. at 223). He expressed no doubt about Coleman grabbing his gun and tugging it up. (*Id*. at 228). While the fighting continued, Seiter tried to shield his taser and handgun from Coleman. He also tried to use a radio microphone on his shoulder to call for help. (*Id*. at 198-199). The radio unit stopped working, however, when Coleman pulled out the cord connecting Seiter's microphone to his radio. (*Id*. at 199-200).
>
> **[\*P5]** Another officer, James Mullins, testified about hearing a "garbled transmission," background scuffling, and a plea for help. (*Id*. at 158). Shortly thereafter, a civilian named Angela Pierce and

>police officer Christopher Colbert came to Seiter's assistance. (*Id*. at 203-204). Colbert noticed that Seiter's microphone cord was "torn off." (*Id*. at 237). For her part, Pierce testified that she was a passenger in a car stopped at a light when she looked over and saw Coleman and Seiter struggling. According to Pierce, she saw Coleman trying to grab Seiter's handgun. (*Id*. at 266). She witnessed Coleman "tugging" on the handgun more than once. (*Id*. at 267, 281).

*State v. Coleman,* 2014-Ohio-856, 2014 Ohio App. LEXIS 825 (2nd Dist. Mar. 7, 2014). A state court's finding of facts in the course of an appeal from a criminal conviction is presumed to be correct. That presumption can only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(2).

**Ground One: Insufficient Evidence of Aggravated Robbery**

In his First Ground for Relief, Coleman asserts that there was insufficient evidence to convict him of aggravated, which is the same issue raised by an Ohio Rim. R. 29 motion for judgment of acquittal. Coleman raised this claim as his First Assignment of Error on direct appeal and the Second District decided it as follows:

>**[\*P7]** In his first assignment of error, Coleman challenges the legal sufficiency of the evidence to support his aggravated robbery conviction under R.C. 2911.01(B), which provides:
>
>>(B) No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
>>
>>(1) The law enforcement officer, at the time of removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's

4

> duties;
>
> (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.

**[*P8]** With regard to sufficiency of the evidence, Coleman claims Seiter was not acting "within the course and scope" of his duties when the alleged handgun tug occurred. According to Coleman, Seiter lacked a lawful basis to order him out of his vehicle for a weapons pat down. Based on the premise that Seiter was violating the Fourth Amendment when he attempted the pat down, Coleman insists that the officer could not have been acting within the course and scope of his duties. Indeed, Coleman reasons that "[a] law enforcement officer cannot be said to be acting within the course and scope of his official duties when said officer's actions operate to deprive a citizen of his Fourth Amendment rights." (Appellant's brief at 7).

**[*P9]** Upon review, we find Coleman's argument to be without merit. For present purposes, we will assume, arguendo, that Seiter lacked authority to conduct a weapons pat down—an issue Coleman argues at length. Even if the attempted pat down violated the Fourth Amendment, we are unpersuaded that Seiter's act of attempting it took him outside the scope of his duties as a police officer. Seiter's law-enforcement duties undoubtedly include making traffic stops, removing stopped drivers from their vehicles, and performing weapons frisks. Even if the frisk here violated the Fourth Amendment, a conclusion we do not make but assume for the sake of analysis, Seiter's act of performing it remained within the course and scope of his duties as a police officer.

**[*P10]** We disagree with Coleman's assertion that "[a] law enforcement officer cannot be said to be acting within the course and scope of his official duties when said officer's actions operate to deprive a citizen of his Fourth Amendment rights." Police officers occasionally do deprive citizens of their constitutional rights while acting in the course and scope of their duties. Federal law provides a remedy for such a situation in the form of an action under 42 U.S.C. §1983.[Footnote omitted.] But even if an officer crosses the line and violates a suspect's constitutional rights, that does not mean he necessarily ceases to act within the course and scope of his duties.

5

> **[\*P11]** Here we harbor no doubt that Seiter was acting within the course and scope of his duties as a police officer when he made a traffic stop, ordered Coleman out of the vehicle, and attempted a weapons pat down. This remains true regardless of the accuracy of Seiter's belief that he was entitled to conduct the pat down. The facts of the present case bear no similarity to the hypothetical situation described in Coleman's brief wherein an on-duty officer sexually assaults a citizen. Coleman suggests it makes no difference whether an officer is conducting an illegal frisk or an illegal sexual assault for purposes of determining whether the officer is acting in the course and scope of his duties. Coleman reasons:
>> * * * [T]o say that our hypothetical officer was acting outside his official duties when committing the sexual assault, but that Officer Seiter was not acting outside his official duties "*enough*" when illegally detaining a citizen, would be to create a very murky and completely unpredictable world where police and citizens must make blind guesses about where an officer's conduct becomes "illegal enough." A decision creating such a dynamic would assist no one.
>
> (Appellant's brief at 13).
>
> **[\*P12]** Coleman's argument fails to persuade us. In no way can an officer's duties be said to include committing sexual assault. On the other hand, detaining and frisking suspects comfortably fits within the course and scope of an officer's duties. We see nothing "murky" about this distinction. For the reasons set forth above, we hold that Seiter was acting in the course and scope of his duties when he removed Coleman from the stopped vehicle and attempted a weapons frisk. Accordingly, Coleman's first assignment of error is overruled.

*State v. Coleman, supra.*

Coleman's argument in his Petition is different from the one he made on direct appeal. There he contended there was insufficient evidence to show that Officer Seiter was acting within the scope of his official duties, which is one of the elements of the offense of aggravated robbery as charged in this case. Here he argues there was insufficient evidence of the attempt to get the gun because (1) there were no fingerprints on the gun and (2) the video of the crime does not show this action.

Assuming without deciding that Coleman fairly presented to the state courts the same claim he makes here, the claim is without merit.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.
> .

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  Here there were two eyewitnesses to Coleman's grabbing for the gun:  Officer Seiter and bystander Angela Pierce.  Their testimony is sufficient to sustain the conviction for aggravated robbery.  Coleman's First Ground for Relief should therefore be denied.

**Ground Two:  Insufficient Evidence for the Vandalism Conviction**

In his Second Ground for Relief, Coleman argues the State presented legally insufficient evidence to support his conviction for vandalism.  As with the First Ground for Relief, he shifts his basis for the claim.  In the Second District, he asserted the State had not shown the radio was necessary to the police officer's occupation or that being a police officer qualified as an occupation under the relevant statute.  Here he argues that the State did not present the "same" radio as an exhibit that Officer Seiter was wearing at the time of the altercation.

Although Ground Two has the same legal basis as Coleman's Second Assignment of Error on direct appeal, it has a completely different factual basis.  Thus Coleman's Second Ground for Relief was not fairly presented to the state courts.

7

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991).

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts."  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2004); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

Because Coleman did not present his Second Ground for Relief to the state courts, it is procedurally defaulted and must be dismissed with prejudice.

**Ground Three:  Unlawful Traffic Stop**

Although Coleman pleads his Third Ground for Relief as another instance of insufficient evidence to support the aggravated robbery conviction, the gist of his claim is that he was stopped and detained because of his race.  This states a claim under the Fourth Amendment which is not cognizable in federal habeas corpus.

Federal habeas corpus relief is not available to state prisoners who allege they were

convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

The opinion of the Second District Court of Appeals does not disclose whether Coleman filed a motion to suppress in the trial court. It seems unlikely that there was such a motion because none of the evidence relied on to convict Coleman was seized from him. Rather, the stop became the occasion for a fight between Coleman and Officer Seiter and all the evidence was witness observations about what happened during the fight. In any event, to the extent the facts presented a possible Fourth Amendment claim, Coleman litigated that claim by asserting the stop was unconstitutional and he had a full opportunity to litigate that through the court of

9

appeals.

Because the Fourth Amendment claim made in the Third Ground for Relief is nto cognizable in habeas corpus, that Ground should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

February 24, 2015.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).